IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMERICA'S RECOMMENDED MAILERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 4:07cv348-RAS |
| | ) | |
| MARYLAND CASUALTY CO., | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW

Plaintiff [hereinafter "ARM"] moves for partial summary judgment pursuant to

Rule 56, FED. R. CIV. P., and requests that this Court enter judgment in its favor and

against Defendant that:

1.   Defendant has an ongoing duty to defend Plaintiff in an action styled *AARP v. American Family Prepaid Legal Corp., Inc.,* No. 1:07cv202, now pending in the United States District Court for the Middle District of North Carolina ["the AARP case"];

2.   Defendant breached that duty when it unreservedly refused Plaintiff in "the AARP case;"

3.   Defendant is liable for breach of contract because of its breach of duty and for damages to Plaintiff in an amount to be determined by the Court, including but not limited Plaintiff's attorney's fees and expenses in 'the AARP case" plus its attorney's fees in this case; and

4.      Defendant is liable to Plaintiff for 18% interest running from the date of its declination of coverage to the date the judgment in this matter is satisfied.

A memorandum of law supporting this motion is attached hereto and incorporated herein by reference.

I.      *UNDISPUTED FACTS.*

For purposes of this Motion, the following facts are undisputed:

1.      Plaintiff is a Texas corporation whose principal place of business is located in this District and Division.

2.      Defendant is an Illinois corporation whose principal place of business is located in Illinois. (First Amended Answer, ¶¶ 2-4; Notice of Removal, ¶ 3.[1])

3.      The amount in controversy in this case exceeds $75,000. *Id.*

4.      Venue is properly laid in this court as a substantial portion of the facts giving rise to this action occurred here. *Id.*

5.      In September 2006, AARP filed "the AARP lawsuit" in the General Court of Justice, Superior Court Division, of Guilford County, North Carolina. (App. at 139-151)  The Defendants in that case, including ARM, removed "the AARP lawsuit" to federal court, where it now pends.

6.      The latest amended pleading in the AARP was the Amended Complaint filed by AARP prior to removal to federal court.  (App. at 153-193.)  In pertinent part

---

[1]     Plaintiff requests that the Court judicially notice the pleadings in this action.  Rule 201, FED. R. EV.

and as more fully set forth in its Amended Complaint,[2] AARP alleged that ARM and other defendants mailed lead cards or other literature relating to living trusts or other financial products to persons in North Carolina.   According to AARP, these cards "feature[ed AARP's] famous trademark" without authorization.  AARP alleged that this usage of its trademark made recipients "falsely believe" that the cards came from AARP. AARP also alleged that these lead cards "deceive older Americans into believing that the cards and the financial products and services of [other Defendants in "the AARP suit"] are connected with AARP."  (App. at 159-160, ¶¶ 21, 29.)

7.     AARP alleged that this use of lead cards and follow-up sales efforts as alleged in the Amended Complaint constitute a pattern of racketeering activity and that the activities "lure[d] potential customers away from the purchase of [AARP]'s licensed financial and insurance services and [AARP] has suffered lost licensing income and royalties . . . ."  (*Id.,* ¶ 91.)

8.     Based upon these and other allegations, AARP alleged that ARM and the other defendants in "the AARP case" had

- violated RICO (*Id.,* Count I, ¶¶ 93-100),

- "use[d] a counterfeit AARP mark in connection with the advertising, promotion, distribution and sale of financial and insurance products" in violation of 15 U.S.C. § 1114(a) (*id.,* ¶¶ 101-105),

---

[2]   By recounting these allegations, ARM does not admit their validity, waive any of its defenses in the underlying action or concede the truth or validity of any of ARRP's claims or demands.   In determining the duty to defend, however, these allegations form the basis for the Court's analysis and so are recounted here.

- committed trademark infringement, false designation of origin and unfair competition in violation of 11 U.S.C. § 1114, alleging in pertinent part that Defendants, including ARM were "using AARP in connection with the advertising, promotion, distribution and sale of lead cards, mailers, living trusts, annuities and other financial and insurance products and services . . . ," and further alleging that Defendants' "unauthorized use and reference to AARP [was] likely to cause confusion, cause mistake and to cause deception that Defendants' products and services come from or are endorsed, approved or licensed by AARP and has caused [AARP] to loss [sic] monies in the form of royalties and licensing" (*id.*, ¶¶ 106-111),

- violated 11 U.S.C. § 1125, alleging in pertinent part that Defendants, including ARM were "using AARP in connection with the advertising, promotion, distribution and sale of lead cards, mailers, living trusts, annuities and other financial and insurance products and services . . . ," and further alleging that Defendants' unauthorized use and reference to AARP [was] likely to cause confusion, cause mistake and to cause deception that Defendants' products and services come from or are endorsed, approved or licensed by AARP" thereby allegedly depriving AARP of its right to control the reputation and goodwill associated with its marks and causing it to "lose monies in the form of royalties and licensing" (*id.*, ¶¶ 112-117),

- further violated 11 U.S.C. § 1125, alleging that "Defendants [were] using Plaintiff's identical mark AARP in connection with the advertising, promotion, distribution and sale of Defendants' products and services" (*id.*, ¶¶ 118-123),

- committed a violation of North Carolina's state RICO Act (*id.*, ¶¶ 124-131), and

- committed trademark infringement, unfair competition, false designation of origin, passing off, dilution, and unfair and deceptive business practices in violation of North Carolina common law (*id.*, ¶¶ 132-152), all based upon the same alleged conduct and activities described above (e.g., ¶ 133, 139, 150: "Defendants' conduct, as described above . . . .").

9.      As relief, AARP sought a permanent injunction, "enhanced actual damages" under North Carolina law, statutory damages under federal law, attorney's fees, costs and other monetary relief.  (App. at 148-149.)

10.      When ARM was served with "the AARP case," it promptly tendered the suit papers to Defendant, from whom it had purchased liability insurance coverage beginning in at least the year 2003.  On November 30, 2006, however, after reviewing only one of its policies, Defendant declined to defend or indemnify Plaintiff for "the AARP case," thereby repudiating entirely its contractual obligations.  (App. at 244-253.)

11.      Defendant issued three policies to Plaintiff for terms from December 10, 2003, to December 10, 2004, December 10, 2004, to December 10, 2005, and December 10, 2005, to December 10, 2006.  (App. at 20, 126, 205.)

12.    Defendant's "Precision Portfolio Policy" PAS 3584749106 provided in pertinent part as follows:

COVERAGE B. PERSONAL AND ADVERTISING LIABILITY

1.  Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal an advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . . .

    b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

As used in the foregoing provision, the term "personal and advertising injury" originally was defined by Defendant to mean

injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication of material that violates a person's right of privacy;

f.  Misappropriation of advertising ideas or style of doing business; or

g.  Infringing upon another's copyright, trade dress, or slogan in your "advertisement."[3]

(App. at 95.)  All of ARM's policies prior to the renewal in December 2005 contained this definition of "personal and advertising injury."  The 2005 renewal removed subpart "f" of the definition.[4]

13.  ARM has borne the costs of "the AARP case" entirely on its own. (App. at 6.)

14.  ARM's principal place of business is in Texas.  (App. at 5.)

15.  Mike Honea Insurance Agency, ARM's insurance broker for all of the policies at issue in this matter, is located in Lewisville, Texas.  (App. at 5, 20, 126, 205.)

16.  All policies at issue in this matter were delivered to ARM in Texas. (App. at 5, 20, 126, 205.)

---

[3]  Defendant's policies defined "advertisement" to mean " a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.'  (App. at 99.)

[4]  According to the documents produced via records deposition from ARM's insurance broker, its policies for the years 2003-2004, 2004-2005, and 2005-2006 each contained form 9S2001 Ed 4-99, which contains the language just quoted.  (App. at 95.)  All were underwritten by Maryland Casualty Co. (App. at 6.)  ARM's policies for prior years also contain this language but were underwritten by related companies to Defendant.  Since AARP alleged that the allegedly wrongful conduct did not begin until Maryland's 2003-2004 policy was in place, Maryland is named as a defendant.

II.     *MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT.*

The undisputed evidence and legal principles applicable to this case make this matter appropriate for disposition by summary judgment, as this memorandum of law demonstrates.

a.      *Standards governing summary judgment.*

Under well-established standards, a movant is entitled to summary judgment under Rule 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant bears the initial burden of "'demonstrat[ing] the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). If the movant meets this burden, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex,* 477 U.S. at 325).

During this process "factual controversies [are resolved] in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* The materiality of facts depends on the substantive law, and only disputes over outcome-determinative facts properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Cases involving an insurer's duty to defend involve questions of law and therefore are particularly amenable to resolution by summary judgment. *See, e.g., Liberty Mut. Ins. Co. v. Graham,* 473 F.3d 596 (5th Cir. 2006); *Northfield Ins. Co. v. Loving Home Care, Inc.,* 368 F.3d 523 (5th Cir. 2004).

b.   *Whose law applies?*

It is not disputed that ARM is a Texas corporation whose domicile and principal place of business is located in Texas.   It likewise is undisputed that the policy in this case provides nationwide coverage. (App. at 8-116, 118-137, 219-242.)

Texas appellate courts and the Fifth Circuit have each held that where a liability policy provides nationwide coverage, the location of the insured risk is of minimal importance in determining which state's law applies.   The insured's principal place of business, where the contract was negotiated and delivered and other similar factors are much more important. *Reddy Ice Corp. v. Travelers Lloyd's Ins. Co.,* 145 S.W.3d 337, 345 (Tex. App. – Houston [14th Dist.] 2004, pet. denied); *cf.  Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.,* 169 F.3d 947, 949-50 (5th Cir. 1999)(same principles; Illinois law).  As in *Reddy Ice* and *Evangelical Lutheran Church,* ARM received nationwide liability insurance coverage for operations emanating entirely from the state of Texas. ARM does not have locations outside of Texas.  (App. at 5.)  The face of its insurance policies lists as producing broker a firm located in Texas.  (App. at 20, 126, 205.)  All of these factors weigh strongly in favor of application of Texas law to this dispute. *See generally Cincinnati Ins. Co. v. RBP Chem Tech. Inc.,*  2008 WL 686156, slip op. at *3 (E.D.

Tex., March 6, 2008)(applying same factors and finding that filing of lawsuit in Texas did not influence choice-of-law analysis where contract and parties were from other jurisdictions).

Thus, Texas law should be applied to this action.  As will be seen, insofar as North Carolina law might apply to this case, it is no different from Texas law, so in fact there is no conflict.  Nonetheless, to the extent that a conflict of laws may be perceived as existing, this Court should apply Texas law to this matter.

c.     *Method for analysis: the "eight corners" test.*

To determine an insurer's duty to defend, Texas courts follow the "eight corners" rule.  *See Federal Ins. Co. v. ACE Prop. & Cas. Co.,* 429 F.3d 120, 123 (5th Cir. 2005); *Lincoln General Ins. Co. v. Reyna,* 401 F.3d 347, 350 (5th Cir. 2005); *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W. 2d 139, 141 (Tex. 1997).  The Court considers only the allegations in the underlying complaint and the terms of the insurance policy to determine whether a duty to defend exists, giving the allegations in the petition a liberal interpretation and resolving any doubt in favor of the insured.  *Samsung Electronics America, Inc. v. Federal Ins. Co.,* 202 S.W.3d 372  (Tex. App. – Dallas 2006, pet. granted).  "The duty to defend is not affected by the facts of the case ascertained before, during, or after the suit." *Cullen/Frost Bank of Dallas, N.A. v. Commonwealth Lloyd's Ins. Co.,* 852 S.W. 2d 252, 255 (Tex. App.-Dallas 1993, writ denied). Nor does the Court consider the reliability of the allegations in the underlying pleadings. *Id.*  The allegations in the suit papers must be accepted as is without resolution of internal

inconsistency or any effort to determine the "essence" of the suit or cause of action. *Id.* Accord, *e.g., GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305 (Tex. 2006). If the claimant's pleadings are silent on certain facts that might defeat coverage, the duty to defend is triggered. *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka*, 267 F. Supp. 2d 601, 612 n.6 (E.D. Tex. 2003); *accord, U.S. Fire Ins. Co. v. United Services Auto. Ass'n*, 772 S.W.2d 218 (Tex. App. – Dallas 1989, writ denied).

In short, whenever the *potential* for coverage appears *to any degree in any portion of the suit papers* the insurer must defend the entire suit. *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1492 (5th Cir. 1992) (emphasis added). The underlying suit papers in "the AARP case" clearly present such potential.[5]

---

[5]   If anything, North Carolina law is at least as favorable to ARM. *See Breezewood of Wilmington Condominiums Homeowners Ass'n v. Amerisure Mut. Ins. Co.,* 2008 WL 859018, slip op. at *3 (E.D.N.C., March 8, 2008):

> Under North Carolina law, "[t]he duty of an insurer to defend its insured is based upon the coverage contracted for in the insurance policy." *Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.,* 52 F.Supp.2d 569, 578 (E.D.N.C.1999) (internal quotation omitted), *aff'd,* 213 F.3d 634 (4th Cir. 2000) (per curiam) (unpublished table decision). To determine whether an insurer's duty to defend arises under North Carolina law, the court employs a "comparison test," wherein it compares the terms of the insurance policy at issue with the allegations in the complaint in the underlying action. *Id.* "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Waste Mgt. of Carolinas, Inc. v. Peerless Ins. Co.,* 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). "Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." *Id.* "[A]llegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable ... suffice to impose a duty to defend upon the insurer." *Id.* at n. 2.
>
> In addition to comparing the allegations in the underlying complaint to the terms of the insurance policy, the court also must examine the facts learned by the insurer from the insured during discovery and the facts discoverable by the insurer through reasonable investigation. *See id.* at 691-92, 340 S.E.2d at 377-78; *Duke Univ. v. St. Paul Fire & Marine Ins. Co.,* 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990); *accord Travelers Indem. Co. v. Miller Bldg. Corp.* 97 F. App'x 431, 433 (4th Cir. 2004) (unpublished).

Unlike most cases involving an insurer's duty to defend, this case involves "Coverage B" of the general liability policy.   And, unlike most "Coverage B" cases involving advertising, the policy at issue in this case does *not* require that the offense occur during the course of the *insured's* advertising activities.   *Compare* App. at 82 *with Cigna Lloyds Ins. Co. v. Bradley Elec., Inc.,* 33 S.W.3d 102, 105 (Tex. App. – Corpus Christi 2000, pet. denied)(quoting typical "advertising injury" provision requiring that one of enumerated offenses occur "in the course of advertising [the insured's] goods, products or services.")   In other words, this policy provides broader coverage than many of the policies previously discussed in the case law.

Because Defendant chose this liberal language, all that ARM must show to surmount Defendant's motion (and to be entitled to summary judgment itself) is that the underlying action contains some allegations potentially falling within one of the listed offenses for a duty to defend to arise.   *Cf. Bay Electric Supply, Inc. v. Travelers Lloyds Ins. Co.,* 61 F. Supp. 2d 611, 617 (S.D. Tex. 1999).[6]   Given the allegations in "the AARP case," attention naturally focuses on offenses (f), relating to misappropriation of advertising ideas or style of doing business, and (g) relating to infringing upon another's copyright, trade dress or slogan.

The covered offense of "misappropriation of advertising ideas or style of doing business" is extremely broad and includes infringement of trade dress.   As defined in

---

[6]   *Bay Electric* included three elements in its list because the policy there contained the requirement that one of the listed offenses occur during the course of and be caused by the insured's "advertising activities."   As noted above, Defendant's policy omits each of these requirements.   Hence, all that ARM must show is an allegation arguably falling within one of the offenses listed in the definition of "personal and advertising injury."

*Greenwich Ins. Co. v. RPS Prods., Inc.*, 379 Ill. App. 3d 78, 882 N.E.2d 1202, 1211 (1st Dist.

2008):

> The trade dress of a product is essentially 'its total image and overall appearance.' " *Lexmark International, Inc.*, 327 Ill. App. 3d at 139, 260 Ill. Dec. 658, 761 N.E.2d 1214, citing *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989). "The total image of a product 'may include features such as size, shape, color or other combinations, texture, graphics, or even particular sales techniques.' " *Lexmark International, Inc.*, 327 Ill. App. 3d at 139, 260 Ill. Dec. 658, 761 N.E.2d 1214, citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). Trade dress recognizes that the "design or packaging of a product may acquire a distinctiveness which serves to identify the product [by the consumer] with its manufacturer or source." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28, 121 S.Ct. 1255, 1259, 149 L.Ed. 2d 164, 172 (2001). "[A] design or package which acquires this secondary meaning, assuming other requisites are met, is a trade dress, which may not be used in a manner likely to cause confusion as to the origin, sponsorship, or approval of the goods." *TrafFix Devices, Inc.*, 532 U.S. at 28, 121 S.Ct. at 1259, 149 L.Ed. 2d at 172.

Trade dress includes the trademark itself. *See, e.g., Adolfo House Distrib. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1339-40 (S.D. Fla. 2001); *CAT Internet Sys. v. Providence Wash. Ins. Co.*, 153 F. Supp. 2d 755, 762 (E. D. Pa. 2001); *Bay Elec. Supply Inc. v. Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 617 (S. D. Tex. 1999); *American Employers' Ins. Co. v. DeLorme Pub. Co.*, 39 F. Supp. 2d 64, 73, 75-77 (D. Me. 1999); *Gemmy Indus. Corp. v. Alliance Gen. Ins. Co.*, No. 3-98-CV-0014-BD, 1998 WL 804698, at *3 (N. D. Tex. 1998); *Industrial Molding v. American Mfrs. Mut. Ins. Co.*, 17 F. Supp. 2d 633, 638 (N. D. Tex.), *vacated on request upon settlement*, 22 F. Supp. 2d 569 (N. D. Tex. 1998); *J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Mass. Bay Inc.*, 818 F. Supp. 553, 558 (W.D.N.Y. 1993), *vacated at attorneys' request*, 153 F.R.D. 36 (W.D.N.Y. 1994); *Poof Toy Prods. v. U.S.*

*Fid. & Guar. Co.,* 891 F. Supp. 1228, 1232-33 (E. D. Mich. 1985). *Cf. Sport Supply Group v. Columbia Cas. Co.,* 335 F.3d 453 (5th Cir. 2003).

As noted in a leading treatise[7] and the cases, "the weight of compelling authority,"[8] including cases construing Texas[9] and North Carolina[10] law holds that trademark infringement claims are covered "misappropriation of advertising ideas or style of doing business" as used in Defendant's policy. *See also, e.g., Greenwich Ins. Co. v. RPS Prods., Inc., supra; Westfield Ins. Co. v. Factfinder Marketing Research Inc.,* 168 Ohio App. 3d 391, 860 N.E.2d 145 (1st Dist. 2006)(coverage exists when the consumer would be misled as to the origin of products and services); *Lebas Fashion Imports of USA, Inc., v. ITT Hartford Ins. Group,* 50 Cal App. 4th 548, 59 Cal. Rptr. 2d 36 (2d Dist. 1996).

The Supreme Court's discussion in *TrafFix Devices, supra,* exactly captures the situation existing in this case. AARP alleged specifically that "Defendants' unauthorized use and reference to AARP "[was] likely to cause confusion, cause mistake and to cause deception that Defendants' products and services come from or are endorsed, approved or licensed by AARP . . . ." (App. at 179.) These allegations assert that the Defendants' use of the AARP name created confusion as to the sponsorship of the goods or services beyond mere trademark infringement. *See Westfield, supra,* 860 N.E.2d at 150. Thus, as the Ohio Court of Appeals found in that

---

[7]   6 J.T. McCarthy, McCARTHY ON TRADEMARKS, § 33:7 (2007).

[8]   *Capitol Indem. Co. v. Elston Self-Service Wholesale Groceries, Inc.,* ___ F.Supp.2d ___, 2008 WL 696919, slip op. at *8 (N.D. Ill., March 13, 2008).

[9]   *Industrial Molding Corp. v. American Mfrs. Mut. Ins. Co., supra; Bay Elec. Supply, supra.*

[10]   *State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.,* 343 F.3d 249 (4th Cir. 2003)

case,[11] they present the potential for coverage under the terms of Maryland's policy, since they clearly state a claim for violation of "trade dress."

The fact that the word "trademark" is used in the caption for various causes of action is irrelevant, since application of the "eight corners" rule under both Texas and North Carolina law requires the Court to look to the substance of the claims rather than to captions or buzz-words in determining whether a duty to defend exists. *See* cases cited at n.6 and accompanying text, *supra*. As the Wisconsin Supreme Court noted in *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 261 Wis. 4, 660 N.W. 2d 666 (2003), section 43 of the Lanham Act (15 U.S.C. § 1125), violations of which are alleged in Counts IV and V of the underlying action, creates a new cause of action distinct from trademark infringement (15 U.S.C. § 1114), which is alleged in different courts, for the particular kind of unfair competition that results from false designation of origin or other false representations used in connection with the sale of a product or service. The plain text of § 1125 shows that a cause of action can be maintained for violation of that section even in the absence of a trademark. The United States Supreme Court has so held. *Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 525 U.S. 205, 209-10 (2000).

Since Maryland's policy does not require anything else for coverage to exist, the allegations just described create the potential for coverage. Maryland has a duty to

---

[11]   As the Texas Supreme Court has noted, courts construing these standardized provisions under Texas law may look to decisions from other states because construction of these provisions should be the same in Texas as elsewhere. *Lamar Homes Inc. v. Mid-Continent Ins. Co.*, 242 S.W.3d 1 (Tex. 2007).

defend Plaintiff in the underlying action based upon this provision of the policy.[12]  It has breached that duty and Plaintiff therefore is entitled to summary judgment as to existence of a duty to defend.

Finally, a brief point as to the alternative provision, "infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'"  Defendant does not seem to challenge the idea that the various materials sent around to the public in North Carolina constitute an "advertisement;" its dispute is whether the advertisement was ARM's.  At various points in the underlying suit papers, e.g., ¶ 62, AARP alleges the existence of a civil conspiracy with respect to the advertisement/campaign, in which ARM is alleged (wrongly) to be a member.  Under North Carolina law, this allegation makes ARM potentially liable for damages from the advertisement/campaign.  *See, e.g., Reid v. Holden,* 242 N.C. 408, 88 S.E. 2d 125 (1955).  Under both Texas and North Carolina law, the Court must construe an insurance policy in favor of the insured if there is any dispute as to the meaning of a term.[13]  Here, AARP alleges that ARM is substantively liable for both the campaign and the ad itself.  Those are sufficient to make it "your 'advertisement'" at least to the point that a duty to defend exists.

---

[12]   Maryland discusses four cases on this point in its motion for summary judgment, each of which is distinguishable.  *Sentry Ins. Co. v. R.J. Weber Co.,* 2 F.3d 554 (5th Cir. 1993), involved a different policy, which covered advertising injury only in the course of its advertising activities.  *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 748 (3d Cir. 1998), and *Pennsylvania Pulp & Paper Co. v. Nationwide Mut. Ins. Co.,* 100 S.W.3d 566 (Tex. App. – Houston [14th Dist.] 2003, pet. denied), each involved theft of trade secrets, not use of a trade name and appearance.  *Sport Supply, supra,* involved construction of exclusions rather than an insuring agreement.  None are apposite to this case.

[13]   *See, e.g., National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Corp.,* 811 S.W. 2d 552 (Tex. 1991).

It therefore is clear that principal insuring agreement in Defendant's policy potentially covers some of the allegations in the underlying AARP suit.

To the extent Defendant argues that Plaintiff has any burden with respect to exclusions, Plaintiff incorporates by reference its Response and Suggestions in Opposition to Defendant's Motion for Summary Judgment.

WHEREFORE, Plaintiff prays that the Court enter Summary Judgment in its favor and against Defendant to the effect that:

1. Defendant has an ongoing duty to defend Plaintiff in an action styled *AARP v. American Family Prepaid Legal Corp., Inc.*, No. 1:07cv202, now pending in the United States District Court for the Middle District of North Carolina ["the AARP case"];

2. Defendant breached that duty when it unreservedly refused Plaintiff in "the AARP case;"

3. Defendant is liable for breach of contract because of its breach of duty and for damages to Plaintiff in an amount to be determined by the Court, including but not limited Plaintiff's attorney's fees and expenses in 'the AARP case" plus its attorney's fees in this case; and

4. Defendant automatically is liable to Plaintiff for 18% interest running from the date of its declination of coverage to the date the judgment in this matter is satisfied. *Lamar Homes, supra.*

Plaintiff further requests that this matter be set for further proceedings on its damages.

Respectfully submitted,

Thomas B. Alleman                      01017485
WINSTEAD P.C.
1201 Elm, Suite 5400
Dallas, Texas 75270
214 745 5103 phone
214 745 5390 fax

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served as shown below this ___ day of June, 2008:

Mariah Baker Quiroz, Esq.                                              via CM/ECF service
Thompson, Coe, Cousins & Irons
700 North Pearl, Suite 2500
Dallas, Texas 75201

_____
Attorney for Plaintiff

Dallas_1\5202372\2
44688-2 6/19/2008